IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| *JOHN C. DUVALL,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-4160-SRB |
| | ) | |
| *CENTURION OF MISSOURI, LLC,* | ) | |
| *TREVOR FOLEY, and KAREN S. BOEGER,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CENTURION OF MISSOURI, LLC'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

COMES NOW Defendant, Centurion of Missouri, LLC ("Centurion"), by and through its undersigned counsel, and submits the following Suggestions in Opposition to Plaintiff John C. Duvall's ("Plaintiff" or "Duvall") Motion for Class Certification ("the Motion") (Doc. 281) and Suggestions in Support (Doc. 282). Plaintiff cannot satisfy commonality, typicality, adequacy, or the heightened cohesiveness Rule 23(b)(2) demands, each of which offers an independent basis for denying the Motion.

## TABLE OF CONTENTS

**Table of Authorities** ........ III

**Introduction** ........ 1

**Factual Background** ........ 2

I. Centurion Provides Contractually-Specified Healthcare Services, Including Dental Care, in MDOC Facilities ........ 2

II. Plaintiff's Dental Care ........ 5

III. Plaintiff Seeks Injunctive Relief for a Putative Class of Inmates ........ 6

**Legal Standard** ........ 8

**Argument** ........ 9

I. Plaintiff Must Ultimately Prove Centurion Had an Unconstitutional Policy or Practice That Was the Moving Force Behind the Alleged Constitutional Violation ........ 9

II. Plaintiff Cannot Meet His Burden to Establish Rule 23(a)'s Prerequisite Requirements

A. The Proposed Class Presents No Common Contention Resolvable in One Stroke ........ 12

B. Plaintiff's Claims Are Not Typical or Adequate ........ 17

III. The Proposed Class Is Not Cohesive Under Rule 23(b)(2) ........ 20

A. No Single Injunction Would Provide Relief to Each Class Member ........ 20

B. The Proposed "Prevailing Standard of Care" Injunctions Lack Required Specificity ........ 21

C. The Existing Health Records System Cannot Support Classwide Implementation or Monitoring of the Proposed Injunctions ........ 23

D. A Lasting Classwide Injunction Against Centurion Is Not Feasible ........ 24

IV. Rule 23(b)(1)(A) Does Not Apply ........ 25

V. The Class Definition Is Overbroad ........ 26

VI. The Revised Dental Treatment Guidelines Undercut Any Fixed, Common Policy ........ 27

**Conclusion** ........ 28

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ahmad v. City of St. Louis*,
995 F.3d 635 (8th Cir. 2021) ....................20, 21, 22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................17, 21, 25

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)....................8, 9

*Avritt v. Reliastar Life Ins.*,
615 F.3d 1023 (8th Cir. 2010) ....................27

*Brabbit as Tr. for Bild v. Capra*,
59 F.4th 349 (8th Cir. 2023) ....................10

*Burnett v. Nat'l Ass'n of Realtors*,
187 F.4th 1051 (8th Cir. 2026) ....................18

*Calmese v. Mo. Dep't of Corr.*, No. 2:25-CV-00055-HEA,
2026 WL 322648 (E.D. Mo. Feb. 6, 2026)....................10

*Carson P. ex rel. Foreman v. Heineman*,
240 F.R.D. 456 (D. Neb. 2007)....................19

*Casey v. Coventry Healthcare of Kan., Inc.*, No. 08-0201-CV-W-DGK,
2010 WL 3636140 (W.D. Mo. Sept. 10, 2010) ....................25, 26

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................18

*Cody v. City of St. Louis*,
103 F.4th 523 (8th Cir. 2024) ....................8, 9, 12, 14, 15, 16, 27

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................8

*Corwin v. City of Indep.*,
829 F.3d 695 (8th Cir. 2016) ....................10

*Cullor v. Baldwin*,
830 F.3d 830 (8th Cir. 2016) ....................15a

*De Rossitte v. Correct Care Sols., LLC*,
22 F.4th 796 (8th Cir. 2022) .......................................................................................10

*Dearduff v. Washington*,
330 F.R.D. 452 (E.D. Mich. 2019) ...........................................................................17, 21

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977).........................................................................................17, 18, 19

*Ebert v. Gen. Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016) .....................................................................12, 20, 21

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2006) .......................................................................................17

*Esler v. Northrop Corp.*,
86 F.R.D. 20 (W.D. Mo. 1979).................................................................................25, 26

*Estelle v. Gamble*,
429 U.S. 97 (1976)........................................................................................................10

*Glasscock v. Sig Sauer, Inc.*,
182 F.4th 740 (8th Cir. 2026) .......................................................................................27

*Glenn-El v. Fluharty*, No. 1:20-CV-00194-SNLJ,
2020 WL 7240756 (E.D. Mo. Dec. 9, 2020) ...............................................................10

*Hamby v. Iowa*,
185 F.4th 816 (8th Cir. 2026) .......................................................................................28

*Harris v. Union Pac. R.R. Co.*,
953 F.3d 1030 (8th Cir. 2020) .......................................................................................16

*Holden v. Hirner*,
663 F.3d 336 (8th Cir. 2011) .......................................................................................15

*Howell v. Evans*,
922 F.2d 712 (11th Cir. 1991) .......................................................................................11

*Hussen v. Noem*,
822 F. Supp. 3d 944 (D. Minn. 2026).............................................................................27

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999) .......................................................................................17

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005) ....................20, 21

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) ....................27

*Jamie S. v. Milwaukee Pub. Schs.*,
668 F.3d 481 (7th Cir. 2012) ....................22, 24

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) ....................27

*John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
78 F.4th 622 (4th Cir. 2023) ....................16

*Johnson v. Karnes*,
398 F.3d 868 (6th Cir. 2005) ....................11

*Jolly v. Knudsen*,
205 F.3d 1094 (8th Cir. 2000) ....................10

*Keup v. Hopkins*,
596 F.3d 899 (8th Cir. 2010) ....................28

*Kress v. CCA of Tenn., LLC*,
694 F.3d 890 (7th Cir. 2012) ....................19, 28

*L.A. Cnty. v. Humphries*,
562 U.S. 29 (2010)....................10

*Lane v. Dittman*,
No. 2:25-cv-04169-SRB (W.D. Mo.) ....................26

*Lopez v. Corr. Med. Servs., Inc.*,
499 F. App'x 142 (3d Cir. 2012) ....................16

*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) ....................22

*McFields v. Dart*,
982 F.3d 511 (7th Cir. 2020) ....................17, 19

*Milcendeau v. Centurion Health Servs.*, No. 1:25-CV-00047-ACL,
2025 WL 2799857 (E.D. Mo. Oct. 1, 2025)....................10

*Monell v. New York City Dep't of Social Servs.*,
436 U.S. 658 (1978) .......... 9, 10, 11

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 16

*Paxton v. Union Nat. Bank*,
688 F.2d 552 (8th Cir. 1982) .......... 17

*Peck v. Mortimer*,
650 F.2d 929 (8th Cir. 1981) .......... 17, 19

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) .......... 11

*Phillips v. Sheriff of Cook Cnty.*,
828 F.3d 541 (7th Cir. 2016) .......... 15, 16

*Postawko v. Mo. Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) .......... 8, 9, 12, 13, 14,

*Rahman v. Chertoff*,
530 F.3d 622 (7th Cir. 2008) .......... 19

*Rawlings v. Drake*,
No. 25-1294 (E.D. Mo.) .......... 26

*Roby v. St. Louis Sw. Ry. Co.*,
775 F.2d 959 (8th Cir. 1985) .......... 17, 19

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
543 F.3d 597 (10th Cir. 2008) .......... 22

*Snider v. City of Cape Girardeau*,
752 F.3d 1149 (8th Cir. 2014) .......... 10

*Thompson v. Jackson*,
No. 6:23-cv-03002-RK (W.D. Mo.) .......... 26

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 18, 27

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 8, 9, 12, 13, 14, 16, 17, 20, 21, 22, 25

*Ware v. Jackson Cnty., Mo.*,
150 F.3d 873 (8th Cir. 1998) ....... 11

*Westefer v. Snyder*,
2006 WL 2639972 (S.D. Ill. Sept. 12, 2006) ....... 26

*Whiting v. Wexford Health Sources, Inc.*,
839 F.3d 658 (7th Cir. 2016) ....... 11

*Wilson v. Seiter*,
501 U.S. 294 (1991) ....... 14

*Yates v. Collier*,
868 F.3d 354 (5th Cir. 2017) ....... 13

**Statutes**

18 U.S.C. § 3626 ....... 24, 25

42 U.S.C. § 1983 ....... 7

**Rules**

Fed. R. Civ. P. 23 ....... 1, 8–9, 12, 15–16, 20–22, 24–26, 28

Fed. R. Civ. P. 65(d) ....... 21

## INTRODUCTION

Plaintiff asks the Court to certify a mandatory class of every person incarcerated now or in the future in a Missouri adult correctional facility—an estimated 25,000 individuals by Plaintiff's count—on a theory that the dental care policies and procedures in place in MDOC facilities violate the putative class's Eighth Amendment rights. (Pl. Mot. Sugg. Doc. 282 at 1, 15–16). A class action of this scope could only ever be appropriate where a single common question, answered once, resolves the Eighth Amendment claims of every class member. That is not the case here. Plaintiff's motion presumes that incarceration in MDOC custody supplies a common constitutional injury relating to dental care for all. The overbroad proposed class would sweep in thousands of current and future inmates and, under the proposed definition, the only bar to entry is whether the individual is an inmate in a Missouri adult correctional facility.

Rule 23 requires far more than a highly generalized challenge to policies or practices. It requires easily identifiable members, common legal and factual questions capable of resolution in a single proceeding, and a legal theory that can resolve all class members' claims in a single stroke without requiring a series of individualized inquiries. Each class member's claim—to the extent one even exists—requires an individual-specific inquiry into the nature of his or her dental care needs and the constitutional adequacy of the care provided. If such claims may be found, they are individual claims, and should be litigated in individual § 1983 lawsuits.

Finally, the Eighth Circuit requires a class definition to exclude any individual who lacks standing. Plaintiff's proposed class does not satisfy that requirement.

Following its "rigorous analysis," this Court should deny the Motion.

## FACTUAL BACKGROUND

In this putative class action, Plaintiff seeks to represent a class of approximately 25,000 individuals "who are incarcerated now, or will be in the future, in Missouri adult correctional facilities subjected to the dental care policies and practices of Defendants[.]" (Pl. Mot. Doc. 281 at 1). The putative class seeks injunctive relief against the Missouri Department of Corrections ("MDOC") and its current healthcare contractor, Centurion.

### I. Centurion Provides Contractually-Specified Healthcare Services, Including Dental Care, in MDOC Facilities.

Centurion is a private healthcare company that provides contractually-specified medical and dental care to inmates in the custody of MDOC pursuant to a Comprehensive Health Care Services contract. (**Pl. Ex. 13**, Amendment 6; **Ex. A**, Keith Lueking, Centurion Rule 30(b)(6) designee, Dep. at 131:17–21; **Ex. B**, Dr. Mahdokht Farahani Dep. (Aug. 14, 2026) at 63:16–64:9). The contract began November 15, 2021, and is set to expire June 30, 2028. (**Ex. A**, Lueking Dep. at 33:2–15, 131:17–21). Pursuant to the contract, Centurion operates within MDOC's policies, including MDOC's Institutional Services Procedure Manual. (**Ex. B**, Farahani Dep. (Aug. 14) at 24:23–25:11; **Ex. A**, Lueking Dep. at 130:9–20; **Ex. D**, Dr. Jeffrey Paskar Dep. at 21:18–22:8; **Ex. E**, Def. Centurion's Supp. Responses to Pl.'s 2d RFP (stating Centurion "is required by its contract with the Missouri Department of Corrections to utilize the policies of the Missouri Department of Corrections")). Centurion needs final sign-off from MDOC to alter or amend any policy. (*Id.* at 25:20–21; **Ex. C**, Dr. Farahani, Centurion Rule 30(b)(6) designee, Dep. (Aug. 25, 2026) at 28:9–15).

The contract includes a staffing matrix that specifies dental staffing requirements at each MDOC facility. (**Ex. B**, Farahani Dep. (Aug. 14) at 67:1–13).[1] Centurion consistently evaluates staffing needs at each facility and offers incentives to recruit additional dentists and dental staffing personnel. (**Ex. C**, Farahani Dep. (Aug. 25) at 36:2–21, 214:22–215:23). Any changes to the dental staffing matrix would require an amendment to the MDOC Contract. Due to Centurion's recruiting efforts, every facility now has a dentist. (**Ex. C**, Farahani Dep. (Aug. 25) at 213:19-214:7. Any FTEs left unfilled will be covered by Dr. Farahani and/or a dentists from a different site. (**Ex. C**, Farahani Dep. (Aug. 25) at 214:8-215:23.

**A. How Dental Services are Delivered**

When an inmate enters the MDOC system the policy suggests that they receive an oral intake screening at a receiving site within seven days of their arrival. (Ex. C, Farahani Dep. (Aug. 25) at 218:10-219:11. Once an inmate arrives at their permanent site they receive an intake examination within 30 days of their arrival. (Ex. C, Farahani Dep. (Aug. 25) at 77:6-78:2. As of August 25, 2026, there were no offenders waiting more than 30 days for the intake examinations. (Ex. C, Farahani Dep. (Aug. 25) at 220:8-221:7.

After the intake screening and initial examination, inmates in MDOC custody can request non-emergent dental services by completing a health service request ("HSR"). (Ex. B, Farahani Dep. (Aug. 14) at 26:23–27:6; Ex. C, Farahani Dep. (Aug. 25) at 62:11-23 (inmates are responsible for requesting dental services for their dental needs through HSR process)). Inmates in MDOC custody can request non-emergent dental services by completing a health service request ("HSR").

---

[1] Originally, Centurion subcontracted dental services to a Missouri-licensed dental practice in order to comply with VAMS 33.2081, (**Ex. A**, Lueking Dep. at 131:22–132:5). The statute was later amended to allow Centurion to directly employ the dental staff. Centurion then terminated the subcontract and hired its own Statewide Dental Director, Dr. Mahdokht Farahani (*id.* at 132:6–14).

(**Ex. B**, Farahani Dep. (Aug. 14) at 26:23–27:6; **Ex. C**, Farahani Dep. (Aug. 25) at 62:11-23 (inmates are responsible for requesting dental services for their dental needs through HSR process)). The HSR form will be triaged by a nurse and logged into MOCIS, MDOC's electronic health record system.[2] (**Ex. B**, Farahani Dep. (Aug. 14) at 28:22–29:10, 36:8–15). The nurse will assess the inmate and notify the dental team of the HSR. (*Id.* at 29:12–22, 33:9–20). The dental assistant logs the HSR and the patient is scheduled to be seen by a dentist. (*Id.* at 35:9–20; 38:23–39:6).

During the initial appointment, the dentist assesses the patient and sets a treatment plan. (*Id.* at 40:2–25). Dental imaging is done as necessary, either at triaging or prior to treatment. (*Id.* at 41:15–24, 48:2–23 (noting imaging is a clinical determination)). Once the initial assessment is completed, the dental assistant will schedule the patient for any necessary follow-up via an electronic scheduling system. (*Id.* at 42:3–11). If the initial assessment indicates that quicker treatment is warranted, the patient is noted as needing higher priority so they can be seen the next time the dentist is at the facility. (*Id.* at 42:12–43:7, 45:8–21).

**B. Applicable Dental Guidelines**

The Dental Treatment Guidelines provide a framework for dentists, who exercise their clinical judgment on a patient-by-patient basis, including the determination of whether a condition is emergent, urgent, or routine, as well as the determination as to necessary follow-up. (**Ex. C**, Farahani Dep. (Aug. 25) at 241:7–14, 63:24–64:22; **Pl. Exs. 1 & 2**, Dental Treatment Guidelines (providing standardized approach to resolving patient dental issues in MDOC clinics)). The use of

[2] MDOC is in the process of replacing MOCIS with a new electronic health record system, and approval of the replacement required action by MDOC leadership, the budget office, and "the governor's office." (**Ex. F**, Eric Connelly Dep. at 89:19–90:4; **Ex. B**, Farahani Dep. (Aug. 14) at 263:15–23).

radiographs at periodic examinations likewise is determined by clinical judgment based on patient needs. (**Ex. C**, Farahani Dep. (Aug. 25) at 134:17–22, 130:17–21 (noting radiographs at periodic examinations are "whatever the clinician determined"); **Ex. B**, Farahani Dep. (Aug. 14) at 47:22–48:23). Dental outcomes are dependent on "multiple factors" beyond dental treatment, including each patient's own oral hygiene and home care. (**Ex. C**, Farahani Dep. (Aug. 25) at 215:3–24, 216:3–24).

Centurion consistently reviews and revises its dental guidelines to improve dental processes and provide efficiencies. (*Id.* at 223:9–224:7 (explaining the guidelines are a "living document" that gets improved over time while still permitting dentists to exercise clinical judgment in treatment decisions), 205:17–22 (discussing limitations of MOCIS system); **Ex. A**, Lueking Dep. at 105:3–5 (noting Centurion reviews the provision of care daily to determine what can be improved), 123:3–4). Centurion also directs revisions to ensure consistency with the standards issued by the Missouri Dental Board and American Dental Association as well as the National Commission on Correctional Healthcare ("NCCHC"), which sets standards to ensure clinical requirements are met. (**Ex. B**, Farahani Dep. (Aug. 14) at 23:10–19; **Ex. C**, Farahani Dep. (Aug. 25) at 18:2–12). Every MDOC facility where dental care is provided is currently accredited by the NCCHC. (**Ex. C**, Farahani Dep. (Aug. 25) at 233:13–17).

## II. Plaintiff's Dental Care.

Since returning to MDOC custody in 2019, Plaintiff testified his "dental cares have been caught up and taken care of, other than the fact that I lost my teeth[.]" (**Ex. G**, John Duvall Dep. at 47:2–7, 57:20–22). Plaintiff's only current dental concerns relate to periodontal care. (*Id.* at 58:1–10). Plaintiff acknowledges that dental conditions have improved since 2022. (*Id.* at 28:2–4). For example, Plaintiff confirmed the dentist at his current MDOC facility "has a really good

reputation." (*Id.* at 43:22–23). Duvall offered that, when his cellmate submitted a request at that facility, he "was promptly seen." (*Id.* at 27:12–15).

**III. Plaintiff Seeks Injunctive Relief for a Putative Class of Inmates.**

Plaintiff filed this lawsuit, pro se, in Missouri state court on May 31, 2023, alleging he was harmed and entitled to monetary damages relating to the dental care he received while incarcerated in the custody of the MDOC. (Doc. 1-1). Following removal to this Court, Plaintiff filed an amended pro se complaint on September 22, 2023. (Doc. 26). Plaintiff moved for appointment of counsel, (Doc. 71), which was granted by the Court in January of 2024 (Doc. 77).

After counsel was appointed, Plaintiff again amended the complaint to assert a putative class action seeking injunctive relief on behalf of "all individuals who are incarcerated now, or will be in the future, in Missouri adult correctional facilities subjected to the dental care policies and practices of the Dental Defendants." (Doc. 140 at ¶ 94). The second amended complaint also included Plaintiff's individual claim for damages relating to Defendants' alleged deliberate indifference to his medical needs by failing to timely repair Plaintiff's molar. (*Id.* at ¶¶ 103–107). Plaintiff's personal claim centered on a delay in repairing a damaged filling on his #4 molar, which he reported in early 2022 and which was later extracted. (*Id.* at ¶¶ 62–70). Plaintiff's individual damages claim was resolved on April 17, 2025. (Doc. 201).

Plaintiff acknowledges Centurion revised the Dental Treatment Guidelines in October 2024 and again in July 2025, including the addition of periodontal-screening provisions. (Pl. Mot. Sugg. Doc. 282 at 3; **Pl. Exs. 1 & 2**, Dental Treatment Guidelines). These revisions were part of Centurion's ongoing overhaul of the dental program after it began providing dental services directly. (**Pl. Ex. 2**, July 2025 Revision). Dr. Farahani testified she understood the changes Plaintiff sought to be the ones Centurion is "implementing and performing now," and she had "already

addressed all those" since she started. (**Ex. B,** Farahani Dep. (Aug. 14) at 21:16–22:1). Her work has been directed to ensuring "all required standards are met not only to NCCHC, but also dental board and dental association." (*Id.* at 23:10–18). Centurion uses the NCCHC standards to set the quality-improvement and accreditation "checks and balances" needed to ensure clinical requirements are met. (**Ex. C**, Farahani Dep. (Aug. 25) at 18:2–12). Centurion reviews "every day" the provision of care to "determine what can be improved," and recruits dentists "for a need" as it arises. (**Ex. A,** Lueking Dep. at 105:3–5, 123:3–4).

Centurion has also executed a targeted hiring push to address unfilled positions by raising salaries, adding bonuses, and hiring a net ten additional dentists; Dr. Farahani testified no dental positions would remain open by October 2026. (**Ex. C**, Farahani Dep. (Aug. 25) at 49:13–50:11). As a result, the statewide backlog fell from over 40 percent in the second quarter of 2025 to approximately 4 percent in the second quarter of 2026, while the number of patients treated roughly doubled. (*Id.* at 125:10–126:4). Facility-level reviews reflect the same progress. After a 2023 survey found the oral care standard unmet at Moberly Correctional Center, the NCCHC's June 2024 focus survey credited the statewide dental director with "an excellent triage and prioritization process" and found the standard "now fully met." (**Ex. H**, NCCHC Audit Report—Moberly Aug. 23, 2024 (Lueking Dep. Ex. A), at 15). Plaintiff himself agreed conditions have improved since 2022, and testified conditions were "much worse back in 2022." (**Ex. G**, Duvall Dep. at 27:25–28:4). Every MDOC facility where dental care is provided is currently accredited by the NCCHC. (**Ex. C**, Farahani Dep. (Aug. 25) at 233:13–17).

Plaintiff filed the operative Third Amended Complaint on June 23, 2025, seeking injunctive and declaratory relief for a putative class on the only remaining count (Count II) alleging deliberate indifference to dental needs under 42 U.S.C. § 1983. (Doc. 202 at ¶¶ 68–81). Plaintiff

seeks to certify the following class: "All individuals who are incarcerated now, or will be in the future, in Missouri adult correctional facilities subjected to the dental care policies and practices of Defendants[.]" (*Id.* at ¶ 68; Pl. Mot. Doc. 281 at 1). Plaintiff's putative class claims against Centurion are based on Plaintiff's allegations that Centurion and the Missouri Department of Corrections maintain policies or customs that expose the putative class to a substantial risk of serious harm as it relates to dental healthcare needs.

## LEGAL STANDARD

Rule 23 is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This Court may certify a proposed class only if, "after a rigorous analysis," it concludes that Rule 23 has "been satisfied." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiff bears the burden to "affirmatively demonstrate" that the proposed class meets all four requirements of Rule 23(a) — (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy — and that the proposed class fits within one of the categories of Rule 23(b). *See* Fed. R. Civ. P. 23(a)–(b). Additionally, reliance on "isolated language from a singular binding authority falls short of the 'rigorous analysis'" Rule 23 requires. *Cody v. City of St. Louis*, 103 F.4th 523, 530–31 (8th Cir. 2024).

The Court's inquiry is limited to whether Plaintiff has satisfied Rule 23. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Rather, merits questions may be considered only to the extent relevant to whether Rule 23's prerequisites are satisfied. *Id.* (citing *Amgen*, 568 U.S. at 466).

Under Rule 23(b)(2), which governs certification of classes seeking injunctive relief, Plaintiff must show that Centurion "has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To satisfy Rule 23(b)(2), a single, specific injunction must provide relief to each member of the class. *Wal-Mart*, 564 U.S. at 360.

## ARGUMENT

The Court should deny certification. Plaintiff cannot satisfy Rule 23(a)'s commonality, typicality, or adequacy requirements. Whether an inmate in MDOC custody has received constitutionally adequate dental care depends on person-specific facts. These claims cannot be resolved in "one-stroke." *Wal-Mart*, 564 U.S. at 350. Instead, for each claim, the Court would have to apply the Eighth Amendment's rigorous standards of culpability and causation.

### I. Plaintiff Must Ultimately Prove Centurion Had an Unconstitutional Policy or Practice That Was the Moving Force Behind the Alleged Constitutional Violation.

As part of its "rigorous analysis," the Court may consider merits questions that "are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. This merits inquiry permits the Court to determine the contours of the factual and legal issues proposed to be tried on a representative basis. *See id.* at 466–70; *see also Cody*, 103 F.4th at 531 (reversing in part because the district court "failed to analyze any theories of liability under *Monell*[3]"). The requisite rigorous analysis requires Plaintiff to show both an underlying constitutional violation and a common Centurion policy or custom capable of classwide proof. It is not sufficient to show that Centurion followed the policy or custom of another party.

Here, Plaintiff seeks to represent current and future inmates in pursuing Eighth Amendment claims that dental care provided to MDOC inmates does not satisfy constitutional standards. A prisoner's Eighth Amendment rights may be violated if prison officials exhibit deliberate

[3] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).

indifference to the prisoner's serious medical needs. *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 106 (1976)). An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective standard. *Id*. It is the plaintiff's burden to demonstrate (1) that they suffered objectively serious medical needs and (2) that prison officials actually knew of but deliberately disregarded those needs. *Id.* (internal citation omitted). Absent a cognizable constitutional violation, there can be no basis for *Monell* liability. *Brabbit as Tr. for Bild v. Capra,* 59 F.4th 349, 354 (8th Cir. 2023) (internal citation omitted).

Further, a private corporation, like Centurion, acting under color of state law cannot be held liable under § 1983 on a theory of respondeat superior. Rather, liability attaches only where a constitutional violation results from a corporation's own policy, custom, or official action. *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 803–04 (8th Cir. 2022); *see also Milcendeau v. Centurion Health Servs.*, No. 1:25-CV-00047-ACL, 2025 WL 2799857, at *5 (E.D. Mo. Oct. 1, 2025); *Calmese v. Mo. Dep't of Corr.*, No. 2:25-CV-00055-HEA, 2026 WL 322648, at *3 (E.D. Mo. Feb. 6, 2026). The same requirement applies to claims for prospective relief. *L.A. Cnty. v. Humphries*, 562 U.S. 29, 39 (2010); *see also Glenn-El v. Fluharty*, No. 1:20-CV-00194-SNLJ, 2020 WL 7240756, at *4 (E.D. Mo. Dec. 9, 2020).

> In order to establish an unconstitutional custom, a plaintiff must demonstrate:
>
> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the entity's employees, (2) deliberate indifference to or tacit authorization of such conduct by the entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Indep.*, 829 F.3d 695, 699 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).

Plaintiff argues "Defendants' unconstitutional dental policies and practices violate the Eighth Amendment" and "put the class members' dental health at risk." (Doc. 282 at 18). But Plaintiff's proof does not support this conclusion. *First*, Plaintiff improperly treats Centurion and the MDOC officials as a single actor with a single set of "policies and practices." (Pl. Mot. Doc. 281 at 1). But Eighth Amendment *Monell* liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 885 (8th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). When policy and practice claims are brought against private contractors operating within a state correctional system, courts ask whether the challenged custom or policy was that of the contractor or one imposed by the state. *See, e.g.*, *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) ("To prevail on his *Monell* claim, [the plaintiff] needs to show that [the private corporation]'s policy, practice, or custom, caused a constitutional violation."); *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("[A] private contractor is liable for a policy or custom of that private contractor, rather than a policy or custom of the municipality."); *Howell v. Evans*, 922 F.2d 712, 724–26 (11th Cir. 1991) (finding the private contractor not liable for state corrections agency's policies because it was not "final authority").

Centurion operates within MDOC's policies, and cannot implement its own guidelines without MDOC's final approval. (**Ex. A**, Lueking Dep. at 130:5–131:16; **Ex. B**, Farahani Dep. (Aug. 14) at 25:15–21). And several of the practices Plaintiff challenges, including the paper HSR process and the MOCIS records system, belong solely to MDOC. (**Ex. B**, Farahani Dep. (Aug. 14) at 36:12–15). Others involve matters of individual clinical judgment, not a custom or policy attributable to Centurion. (**Ex. C**, Farahani Dep. (Aug. 25) at 241:11–13).

*Second*, Plaintiff spends pages of his Suggestions describing best dental practices and lamenting the current dental written policies and the lack of tracking mechanisms for inmate dental care, but fails to identify instances in which these policies (or lack thereof) can be identified as the moving force behind any inmate's alleged constitutional injury.

Plaintiff has not presented sufficient proof related to the challenged policies or procedures to demonstrate either the final decisionmaker or that such policy or practice is the moving force of each putative class member's alleged Eighth Amendment claim.

## II. Plaintiff Cannot Meet His Burden to Establish Rule 23(a)'s Prerequisite Requirements.

### A. The Proposed Class Presents No Common Contention Resolvable in One Stroke.

Commonality requires Plaintiff show the class members "have suffered the same injury," such that the claims "depend upon a common contention" whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. What matters is not the raising of common questions "even in droves," but "the capacity of a class-wide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Id.* (internal quotation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Cody*, 103 F.4th at 530 (quoting *Wal-Mart*, 564 U.S. at 350). Because any competently drafted class complaint can raise common questions, "merely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2)." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016).

Here, Plaintiff frames his common question as "the constitutionality of Defendants' dental policies." (Pl. Mot. Sugg. Doc. 282 at 17). This question is common only at a level of generality rejected by the Supreme Court. *See Wal-Mart*, 564 U.S. at 355–61 (finding no commonality for an

alleged "general policy of discrimination" in pay or promotion in Wal-Mart stores nationwide).

Plaintiff attempts to rely on *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017), to argue that "Defendants' policies are so deficient that they violate every inmate's Eighth Amendment rights—regardless of their dental health." (Pl. Mot. Sugg. Doc. 282 at 19). But, contrary to Plaintiff's argument, this case is not analogous to the policy challenged in *Yates*, where the Fifth Circuit affirmed a general class of "all inmates who are currently, or in the future will be, incarcerated" in a housing unit in Texas without air conditioning. 868 F.3d at 361. The Fifth Circuit noted the defendants did not contest that all putative members were exposed to the same, "often extreme" temperatures in the summer, or that, "absent mitigation measures, ***every inmate***, in [that housing unit] is at a substantial risk of serious harm due to the heat." *Id.* In affirming the general class, the Fifth Circuit accepted the district court's findings that the current heat-mitigation efforts "were ineffective to reduce the risk of serious harm to a constitutionally permissible level for ***any*** inmate, including the healthy inmates." *Id.* at 363.

Plaintiff's Suggestions challenge numerous separate practices to claim all inmates are exposed to substantial risk of serious harm: (1) no procedure for providing comprehensive exams or periodontal screening, (2) absence of mandatory radiographs for all inmates, (3) the timelines (or lack of deadlines) for extractions and restorations for emergent, urgent, and routine conditions, and (4) the method for tracking whether dental care meets policy timelines. (Pl. Mot. Sugg. Doc. 282 at 1–2, 24–25). But Plaintiff's Suggestions offer no evidence that the challenged practices present a serious risk of harm to ***all*** inmates in MDOC custody. Plaintiff offers no evidence to support a finding that these policies, or the failure to enact policies, will result in a serious risk of substantial harm to all current and future inmates in MDOC custody.

Plaintiff also likens his putative class to that certified in *Postawko.* (Pl. Mot. Sugg. Doc. 282 at 19–20). This reliance is misplaced. In *Postawko*, a group of plaintiffs alleged that MDOC maintained a policy of withholding treatment from inmates with Hepatitis C. 910 F.3d at 1035–36. The Eighth Circuit affirmed certification of a narrowly-tailored injunctive relief class relating to a single medical diagnosis who were not being treated with a single, specific type of drug: "All those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic HCV [the virus responsible for Hepatitis C], as that term is defined medically, but who are not provided with direct acting antiviral drugs." *Id.* at 1036–1040. There, the claim challenged a screening and treatment protocol for a single disease, which was "uniformly applied" to every class member. *Id.* at 1038, 1040. The Eighth Circuit distinguished *Wal-Mart* on the ground the plaintiffs alleged "a single policy related to HCV treatment and APRI [Aspartate Aminotransferase-to-Platelet Ratio Index] scores that involves no discretionary decision-making." *Id.* at 1039 n.5.

Six years later, the Eighth Circuit rejected an effort to extend *Postawko* beyond its "precisely defined" class claims. *See Cody*, 103 F.4th at 532. In *Cody*, which Plaintiff omits from his briefing, the plaintiffs, relying on *Postawko*, argued that "exposure to risk is what violates the Constitution[.]" 103 F.4th at 532. The Eighth Circuit disagreed. The *Cody* court explained that municipal liability for the alleged conditions—plumbing, mold, and pests—"will turn on both the severity of the conditions each plaintiff faced, and the length of exposure to those conditions." *Id.* at 531. Whereas the *Postawko* class was "precisely defined," the *Cody* class complained only of "undifferentiated 'putrid physical conditions.'" *Id.* at 532. Accordingly, the court determined the classes before it were "more like the 'amorphous' overall-conditions claims" the Supreme Court disapproved in *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). *Id.*

Plaintiff's proposed class is analogous to those rejected in *Cody*[4] and in the Seventh Circuit in *Phillips v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016). In *Phillips*, the Seventh Circuit rejected the plaintiffs' proposed question of whether the jail provided timely "return to clinic" appointments common to the class because, "to determine whether a return visit is 'timely,' a court must look at evidence that will be unique to each individual class member." 828 F.3d at 556. The same result would be reached here. Individual circumstances of each class member must be considered when determining whether a missed deadline for extractions, restorations, or other dental care violated that member's constitutional rights. *See id.*; *see also Cullor v. Baldwin*, 830 F.3d 830, 836–37 (8th Cir. 2016) (finding where deliberate indifference claim is based on "a delay in medical treatment, [the court] measure[s] 'the objective seriousness of the deprivation … by reference to the ***effect*** of delay in treatment'"); *Holden v. Hirner*, 663 F.3d 336, 342–43 (8th Cir. 2011) (finding evidence did not show that alleged tooth pain constituted a serious medical need). Resolution of each of the alleged policy deficiencies turns on individualized evidence specific to each inmate. Plaintiff has made no effort to address these issues. Constitutionally adequate timelines for "life-threatening" dental conditions, urgent dental conditions, and routine issues are necessarily dependent on the individual facts and medical histories of each inmate, and there is no evidence that each inmate is at a substantial risk of constitutional harm if those timelines are not defined in a written policy.

---

[4] Centurion recognizes *Cody* arose under Rule 23(b)(3) and addressed predominance as well as commonality. 103 F.4th at 530–31. Its analysis of *Postawko*, however, did not turn on the predominance inquiry. It asked whether mere exposure to risk can supply a common injury at all — the very question Rule 23(a)(2) poses here. That proposition is posture-neutral: an injury too individualized to be common for predominance purposes is equally incapable of generating a common answer under Rule 23(a)(2).

Plaintiff seeks to certify a general class of all current and future inmates in MDOC custody because they may be exposed to potential risk of dental harm by virtue of being incarcerated in an MDOC facility. This is precisely the type of theory rejected by *Cody*. Exposure to a hypothetical risk of harm cannot pass Rule 23's commonality prerequisite. *See, e.g.*, *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 147 (3d Cir. 2012) (finding a policy choice to screen certain inmates rather than all inmates for HCV "cannot serve as the basis of a deliberate indifference claim"); *cf. John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 633 (4th Cir. 2023) ("[J]ust because a policy or practice exists and is unconstitutional does not mean a particular plaintiff has been injured[.]"). Plaintiff's own proposed radiograph injunction concedes the point by recognizing the need to carve out cases in which "a dentist identifies a valid reason not to using clinical judgment." (Pl. Mot. Sugg. Doc. 282 at 25). Any such challenge to the outcomes of thousands of individualized clinical decisions lacks the "glue" commonality requires. *Wal-Mart*, 564 U.S. at 352.

The Eighth Circuit has reversed certification where a facially "single set of medical standards" produced individualized outcomes because each case was assessed through independent judgment. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1034, 1036–37 (8th Cir. 2020) (finding the individualized inquiries could not be addressed in a manner consistent with Rule 23). A uniform written dental policy applied through case-by-case clinical judgment presents the same problem. Other courts addressing dental-care classes have reached the same conclusion.[5] *See Phillips*, 828 F.3d at 554–58 (decertifying a jail dental-care class because commonality could

[5] Plaintiff's reliance on *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), does not change the outcome here. (Pl. Mot. Sugg. Doc. 282 at 19–20). *Parsons* rests on the aggregated-exposure theory the Eighth Circuit has declined to adopt. *Compare Parsons*, 754 F.3d at 676, 687–88, *with Cody*, 103 F.4th at 532 (noting "we do not agree that *Postawko* establishes the bare syllogism that exposure to risk amounts to a constitutional violation").

not be found where each member "present[ed] a different situation that involved a different type of dental pain, took place at a different time, involved different medical professionals and prison staff, and concerned a different alleged deficiency[.]"); *McFields v. Dart*, 982 F.3d 511 (7th Cir. 2020) (affirming denial of certification of jail dental-care class because proof of a uniform triage policy was "just one small part" of the liability analysis); *Dearduff v. Washington*, 330 F.R.D. 452 (E.D. Mich. 2019) (declining certification because diversity of prisoners' dental health needs defeated the one-stroke resolution required by *Wal-Mart*).

**B. Plaintiff's Claims Are Not Typical or Adequate.**

"The adequacy and typicality requirements 'serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 59, 626 n.20 (1997)).

Typicality requires the class representative to "possess the same interest and suffer the same injury" as the class members. *Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985) (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *Elizabeth M. v. Montenez*, 458 F.3d 779, 785–87 (8th Cir. 2006). Although typicality is often satisfied in injunctive cases, the representative's claim must arise from the same course of conduct and rest on the same legal or remedial theory as the class claims. *Postawko*, 910 F.3d at 1039. An inmate who is not "personally subjected to all of the conditions of which he complains" is not a suitable representative. *Peck v. Mortimer*, 650 F.2d 929, 930 (8th Cir. 1981). Similarly, an adequate class representative has no interest antagonistic to or materially divergent from those of absent members. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 563 (8th Cir. 1982). A plaintiff who lacks class

membership is clearly an inadequate class representative. *See Rodriguez*, 431 U.S. at 404 (finding where the named plaintiff "could have suffered no injury as a result of the alleged discriminatory practices," he was an inadequate representative for a class who did suffer such injury).

A named plaintiff must also have standing to seek each form of injunctive relief he pursues. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (noting "standing is not dispensed in gross"). To seek an injunction, a plaintiff must show a "real and immediate" threat of future injury, and past exposure to allegedly unlawful conduct does not suffice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05 (1983); *see also Burnett v. Nat'l Ass'n of Realtors*, 187 F.4th 1051, 1066 (8th Cir. 2026) (noting at least one named representative must show injury "certainly impending" or posing a "substantial risk" of occurring). Plaintiff's personal claim arises from an alleged delay in restorative care in 2022 and 2023. (Third Am. Compl. Doc. 202 ¶¶ 53–58; Pl. Mot. Sugg. Doc. 282 at 21). Those events predate the October 2024 Dental Treatment Guidelines and the July 2025 revisions and ongoing revisions to those guidelines.[6] (**Pl. Exs. 1 & 2**). And Plaintiff agrees that his dental needs "have been caught up and taken care of," and his only present complaint now relates to periodontal care. (**Ex. G**, Duvall Dep. at 57:20–58:10). He has no pending request for a filling or extraction; and has no present dental pain. (*Id.* at 88:13–19). Plaintiff therefore faces no real and immediate threat of injury relating to comprehensive exams, the presence or absence of mandatory radiographs, policy timelines related to extractions or restorations, or any method for tracking whether dental care meets strict policy timelines. *See Lyons*, 461 U.S. at 101–05.

Plaintiff's claim also diverges from those of the class he seeks to represent. While Plaintiff now complains about the adequacy of his periodontal care, a theory unconnected to his original

[6] The Guidelines and related charting guides are actively undergoing additional changes. (**Ex. C**, Farahani Dep. (Aug. 25) at 57:21–58:8, 59:11–60:19, 80:1–18).

claim of dental care delays, the class claims extend far beyond. Plaintiff is therefore not a suitable representative for the proposed injunctive-relief class. *See Peck*, 650 F.2d at 930; *see also McFields*, 982 F.3d at 518 (finding the named plaintiff atypical in jail dental class where each member "presents fundamentally unique circumstances"); *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 893 (7th Cir. 2012) (finding claims of inadequate medical care against private correctional contractor "by their nature require individual determinations").

And Plaintiff's own testimony raises doubt about his understanding of the role he seeks. (**Ex. G**, Duvall Dep. at 37:19–38:2 (testifying he received a description of a class representative's duties but "didn't read it" or doesn't remember it)). He also has not seen the Centurion–MDOC dental contract under which the challenged care is provided. (*Id.* at 56:24–57:4). A representative unfamiliar with his own obligations to the class, and with the contract governing the program he asks the Court to restructure, is poorly positioned to protect the interests of approximately 25,000 absent class members. *See Rodriguez*, 431 U.S. at 405.

Plaintiff also seeks relief different from that proposed for the class. (**Ex. G**, Duvall Dep. at 61:21–62:12) (testifying he seeks "[c]omprehensive evaluation at intake and then yearly comprehensive evaluations"). A representative whose interest is confined only to some of the challenged practices cannot represent class members whose claims rest on the others. *See Roby*, 775 F.2d at 961 (noting named plaintiffs could only represent the subclasses matching their own injury); *see also Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008) (disapproving certification of "across-the-board classes" defined to cover all challenged practices whether or not the proposed representatives had been injured by a particular practice). The adequacy inquiry also overlaps with Plaintiff's own stake in the relief sought. A named plaintiff who has no live claim for the prospective relief the class seeks cannot adequately represent a class seeking it. *See Carson P. ex*

*rel. Foreman v. Heineman*, 240 F.R.D. 456, 510 (D. Neb. 2007). Because Plaintiff's dental needs have, by his own account, been resolved, he is not positioned to represent a forward-looking injunctive class, and his inadequacy is an independent reason to deny certification.

## III. The Proposed Class Is Not Cohesive Under Rule 23(b)(2).

### A. No Single Injunction Would Provide Relief to Each Class Member.

To satisfy Rule 23(b)(2), a single, specific injunction must provide relief to each member of the class. *Wal-Mart*, 564 U.S. at 360. Rule 23(b)(2) permits certification only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, "[f]or certification to be appropriate, the class claims must be 'cohesive.'" *Postawko*, 910 F.3d at 1039 (internal quotation omitted). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a ***different*** injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360; *Postawko*, 910 F.3d at 1039–40. Because a Rule 23(b)(2) class is mandatory and affords no notice or right to opt out, greater cohesiveness is generally required than in a Rule 23(b)(3) class. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121–22 (8th Cir. 2005); *Ebert*, 823 F.3d at 480 (noting "cohesiveness is the touchstone of a (b)(2) class" and must be stringently applied). Certification is improper where "disparate factual circumstances of class members" prevent a class from being cohesive. *Ebert*, 823 F.3d at 480–81. "When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and the cohesiveness necessary to proceed as a class under Rule 23(b)(2) is lacking." *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021) (quoting *Ebert*, 823 F.3d at 480).

Plaintiff cannot meet this standard. The proposed Rule 23(b)(2) class includes current and future individuals who are, or will be, incarcerated in MDOC facilities. These individuals present different dental health needs, which require different clinical responses. There is no single injunction that could resolve the class's claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiff argues the injunctive relief requested "would apply equally to every member of the class." (Pl. Mot. Sugg. Doc. 282 at 24). However, the need to fashion different relief for different groups of inmates demonstrates that the class is not cohesive. *See Ahmad*, 995 F.3d at 644 (citing *Ebert*, 823 F.3d at 480); *Dearduff*, 330 F.R.D. at 466–67 (finding diversity of prisoners' dental health precluded certification of the all-inmate class). The Eighth Circuit reversed certification of a medical-monitoring class because "each plaintiff's need (or lack of need) for medical monitoring is highly individualized," depending on medical history, condition, and risk factors. *St. Jude*, 425 F.3d at 1122 (citing *Amchem*, 521 U.S. at 624). Each inmate's need for examinations, screening, imaging, and treatment varies in the same way.

**B. The Proposed "Prevailing Standard of Care" Injunctions Lack Required Specificity.**

Three of Plaintiff's proposed injunctions would require Defendants to conduct comprehensive examinations and adopt a periodontal disease treatment policy meeting "the prevailing standard of care," as well as to ensure radiographs are used in treatment planning unless a dentist identifies a valid clinical reason otherwise. (Pl. Mot. Sugg. Doc. 282 at 24–25). Two more would require Defendants to "formulate and implement a system" to ensure "timely access to necessary care" and to track dental requests. (Pl. Mot. Sugg. Doc. 282 at 25). None of these proposals define what conduct is required or prohibited.

Every injunction must "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The Eighth Circuit has reversed a

Rule 23(b)(2) class where plaintiffs "made no attempt to define precisely what permanent injunctive relief they are seeking." *Ahmad*, 995 F.3d at 644. Class members' injuries "must be sufficiently similar that they can be addressed in [a] single injunction that need not differentiate between class members," and "individual issues cannot be avoided simply by formulating an injunction at a stratospheric level of abstraction[.]" *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604–09 (10th Cir. 2008) (denying certification of a class comprised of all present and future mentally ill inmates at a Colorado jail). Plaintiffs must give meaningful content to what "adequate" or "appropriate" care means before a Rule 65(d)-compliant injunction can be crafted. *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012) (denying certification of a class comprised of all children who were and would be in Texas' long-term foster care). An injunction requiring compliance with the "prevailing standard of care" would leave the content of the Court's order to be determined patient by patient, through the same individualized clinical inquiries Rule 23(b)(2) is meant to avoid.

Even the community standard Plaintiff invokes is not fixed. Dr. Farahani testified radiograph frequency in the community depends on "clinical judgment, and every provider could have their different clinical judgment," based on each patient's risk. (**Ex. C**, Farahani Dep. (Aug. 25) at 131:9–132:7, 75:22–76:10 (testifying periodontal disease is treated using clinical judgment)). Relief that "would merely initiate a process through which highly individualized determinations of liability and remedy are made" is "class-wide in name only." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498–99 (7th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 360). The *Postawko* injunction was affirmed where it prohibited the delay or denial of treatment of a specific disease with a specific drug. Plaintiff here offers no concrete command that could resolve

the alleged dental care deficiencies on a "uniform, generally applicable basis." *Postawko*, 910 F.3d at 1040.

### C. The Existing Health Records System Cannot Support Classwide Implementation or Monitoring of the Proposed Injunctions.

Plaintiff's proposed injunctions are dependent on a records system capable of identifying, tracking, and reporting dental care on a statewide basis. Plaintiff asks the Court to order Centurion—which has no control over the electronic health records system used in MDOC facilities—to "formulate and implement a system to track dental requests from submission by a patient to completion of treatment" and to "monitor for substantial compliance with the metrics established by policy." (Pl. Mot. Sugg. Doc. 282 at 25). The other proposed injunctions likewise require a system to identify inmates due for examinations and to document radiographs and periodontal screening. (Pl. Mot. Sugg. Doc. 282 at 24–25). However, the record indicates MOCIS cannot perform these functions.

Undisputed testimony reveals that once an HSR reaches the treatment stage, there is no visibility in MOCIS to when the patient first submitted it "unless someone goes and finds the physical HSR." (**Ex. B**, Farahani Dep. (Aug. 14) at 82:22–83:12). MOCIS cannot require any field to be completed before a charting guide is submitted. (*Id.* at 83:18–21). MOCIS "only allows HSR reports to be run on a facility-by-facility basis," and HSR tracking since November 2025 has required manual entry of data into separate spreadsheets. (**Ex. I**, Centurion's Second Supp. Ans. to Pl.'s Fourth Interrogs., No. 17). MOCIS also "cannot generate a complete and reliable statewide list" of inmates whose records contain a particular dental risk factor. (**Ex. J**, Centurion's Ans. to Pl.'s Fifth Interrogs., No. 22). MOCIS is not set up to "track the lifecycle" of an HSR from submission through treatment. (**Ex. F**, Eric Connelly Dep. at 34:15–22, 36:15–17). NCCHC surveyors have likewise described the system as "more of a repository of information" without

"any capacity for scheduling future appointments" or "tracking upcoming tasks." (**Ex. K**, NCCHC Accreditation Report, Report Date Aug. 18, 2023, DUVALL 0316187–88).

These limitations bear on the shape and administration of any remedy to the extent any class could be certified—which for the reasons set forth above, Centurion opposes. Determining whether any inmate received timely care under an injunction would require a review of that inmate's paper and electronic records at their facility. Compliance with each of Plaintiff's proposed injunctions would be measured through the same individualized inquiry Rule 23(b)(2) is meant to avoid. As noted above, relief which "would merely initiate a process through which highly individualized determinations of liability and remedy are made" is "class-wide in name only." *Jamie S.*, 668 F.3d at 498–99. An injunction the Court could not monitor or enforce on a classwide basis also fails Rule 65(d)'s requirement of specific, enforceable terms.

Finally, an order directing Defendants to build a statewide tracking system would intrude on those decisions and carries precisely the "adverse impact on … the operation of a criminal justice system" the Prison Litigation Reform Act ("PLRA") directs the Court to weigh. *See* 18 U.S.C. § 3626(a)(1)(A); *see also Postawko*, 910 F.3d at 1040 (internal quotation omitted) (acknowledging "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law").

**D. A Lasting Classwide Injunction Against Centurion Is Not Feasible.**

As an initial matter, Centurion, as MDOC's healthcare contractor, is subject to MDOC control. (**Ex. A**, Lueking Dep. at 131:7–16; **Ex. B**, Farahani Dep. (Aug. 14) at 25:20–21; **Ex. C**, Farahani Dep. (Aug. 25) at 28:9–15). Centurion's tenure in MDOC facilities is also not open-ended. Centurion's current contract runs through June 30, 2028, and any successor contract will be awarded through MDOC's competitive bidding process. (**Ex. A**, Lueking Dep. at 33:14–15).

Any injunction directing Centurion to restructure a statewide dental program would both go beyond Centurion's authority as it relates to its contract with MDOC and potentially bind a private contractor whose role in MDOC facilities may end within the life of the decree.

Such relief in the form of an open-ended mandate to meet the "prevailing standard of care" across every facet of a statewide dental program also fails because it is neither "narrowly drawn" nor the "least intrusive" remedy. *See* 18 U.S.C. § 3626(a)(1)(A). This Court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system[.]" *Id.* This statutory concern is heightened where the requested relief would reach a contractor's role MDOC alone controls and confirms no single injunction against the Defendants before the Court would provide lasting relief to each class member. *See id.*; *Wal-Mart*, 564 U.S. at 360.

**IV. Rule 23(b)(1)(A) Does Not Apply.**

Rule 23(b)(1)(A) permits certification where separate actions "would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). This rule addresses cases in which the defendant is obliged by law, or by practical necessity, to treat class members alike. *Amchem*, 521 U.S. at 613–14 (internal citation omitted). It does not apply merely because a defendant may win some cases and lose others. Differing outcomes across separate suits do not create incompatible standards of conduct. *Casey v. Coventry Healthcare of Kan., Inc.*, No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *4 (W.D. Mo. Sept. 10, 2010). Rule 23(b)(1) is limited to cases in which separate adjudications would place the defendant in an "actual or virtual dilemma[.]" *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D. Mo. 1979).

Plaintiff argues that inconsistent adjudications "would be administratively difficult for Defendants" and points to other pending inmate dental suits. (Pl. Mot. Sugg. Doc. 282 at 1, 23–

24). Any "administrative difficulty" is not synonymous with incompatibility. *See Casey*, 2010 WL 3636140, at *6; *Esler*, 86 F.R.D. at 38. Plaintiff does not explain how a judgment in one inmate's individual case would legally prevent Centurion from complying with a judgment in another. Nor does Plaintiff identify any conflicting injunction entered in the other supplied cases. *See, e.g.*, *Thompson v. Jackson*, No. 6:23-cv-03002-RK (W.D. Mo.); *Lane v. Dittman*, No. 2:25-cv-04169-SRB (W.D. Mo.); *Rawlings v. Drake*, No. 25-1294 (E.D. Mo.). Different results, of course, are an expected outcome in § 1983 lawsuits where courts evaluate individualized facts under the deliberate-indifference standard's objective and subjective prongs given each plaintiff's unique medical condition, treatment, and other circumstances.

Plaintiff's principal authority, *Westefer v. Snyder*, 2006 WL 2639972 (S.D. Ill. Sept. 12, 2006), is an unpublished, out-of-circuit decision and does not displace the plain text of the rule. *Westefer* is also distinguishable on its facts. It involved a single, uniform practice—the procedures the Illinois Department of Corrections used to assign inmates to one supermax facility—and turned on one common question: whether assignment to that facility implicated a due process liberty interest and, if so, what process was constitutionally required. *Id.* at *4. The Rule 23(b)(1) risk there was concrete. *Id.* at *8. Here, by contrast, Plaintiff challenges the adequacy of dental care delivered across every MDOC facility as it is applied to every individual inmate where both liability and the measure of any remedy turn on individualized facts. A judgment in one inmate's case therefore would not legally obstruct Defendants from complying with a judgment in another, and Plaintiff identifies no parallel action—let alone a conflicting injunction—of the kind driving the result in *Westefer*.

## V. The Class Definition Is Overbroad.

"[A] class may not be certified if some of its members lack standing to bring the suit themselves." *Hussen v. Noem*, 822 F. Supp. 3d 944, 1005-06 (D. Minn. 2026) (citing *Avritt v. Reliastar Life Ins.*, 615 F.3d 1023, 1034 (8th Cir. 2010); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)). While "[e]ach class member is not required to 'submit evidence of personal standing,' … a class must 'be defined in such a way that anyone within it would have standing.'" *Id.* (quoting *Avritt*, 615 F.3d at 1034).

Plaintiff's proposed class includes every person incarcerated in a Missouri adult correctional facility, now or in the future, without regard to whether the person has any dental need or has been affected by any challenged policy. (Pl. Mot. Doc. 281 at 1). A class defined by mere exposure to a dental program is the type of "amorphous" class the Eighth Circuit found deficient in *Cody*. 103 F.4th at 531–32. And because each class member must have standing to obtain relief, a class sweeping in potentially thousands of inmates who have not suffered a constitutional violation relating to their dental needs cannot be certified. *TransUnion*, 594 U.S. at 431; *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987–88 (8th Cir. 2021); *Avritt*, 615 F.3d at 1034; *see also Glasscock v. Sig Sauer, Inc.*, 182 F.4th 740, 743–44 (8th Cir. 2026).

## VI. The Revised Dental Treatment Guidelines Undercut Any Fixed, Common Policy.

Plaintiff acknowledges Centurion revised the Dental Treatment Guidelines in October 2024 and again in July 2025, including the addition of periodontal-screening provisions. (Pl. Mot. Sugg. Doc. 282 at 3). These revisions were part of Centurion's ongoing evaluation and revision of the dental program. (*Id.*; **Pl. Ex. 2**, July 2025 Revision, DUVALL 0297068–0297080). Some of the changes include those that Plaintiff originally sought to be addressed. (**Ex. B**, Farahani Dep. (Aug. 14) at 21:16–22:1). Critically, as relevant to this certification analysis, the policies will change again regardless of this litigation. The NCCHC issued revised standards in 2026, including

its oral care standard, and Centurion is revising its Guidelines to conform within the time NCCHC surveyors allow. (Pl. Mot. Sugg. Doc. 282 at 7 (citing **Pl. Ex. 6**, NCCHC, Standards for Health Services in Prisons, P-E-06 Oral Care (2026)); **Ex. C**, Farahani Dep. (Aug. 25) at 233:4–12).

Where current policies already provide the relief Plaintiff seeks, there is no classwide controversy as to those policies for an injunction to resolve. *See Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010) (noting amendment of challenged prison policy eliminated need for ***prospective*** relief); *see also Kress*, 694 F.3d at 893–94 (finding where a correctional contractor took remedial measures and there was "no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers"); *see also Hamby v. Iowa*, 185 F.4th 816, 826–27 (8th Cir. 2026) (finding prospective-relief claims under the Religious Land Use and Institutionalized Persons Act mooted by the Iowa Department of Corrections' policy change to permit the use of candles with open flames).[7]

## CONCLUSION

Plaintiff has not carried his burden under Rule 23(a) or Rule 23(b). For the foregoing reasons, Defendant Centurion of Missouri, LLC respectfully requests the Court deny Plaintiff's Motion for Class Certification (Doc. 281), deny Plaintiff's requests for appointment as class representative and for appointment of class counsel, and grant such further relief as the Court deems just and proper.

---

[7] To the extent Plaintiff argues voluntary cessation, that analysis is inapposite because the question at this stage is whether there is a single, fixed policy whose lawfulness can be resolved for every class member at once. As discussed, that question cannot be answered in the affirmative. The current written Guidelines affirmatively provide the examinations, screening, and imaging Plaintiff seeks, and the program's continual revision, independent of this suit, shows there is no static policy to adjudicate.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Dennis S. Harms*

Dennis S. Harms, #58937
Slater G. Felzien, #73110
701 Market Street, Suite 600
St. Louis, MO 63101-1826
314-231-3332
314-241-7604 (Fax)
dharms@sandbergphoenix.com
sfelzien@sandbergphoenix.com

*Attorneys for Defendant Centurion of Missouri, LLC*

**Certificate of Service**

I hereby certify that on this the 18th day of November 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ruth Anne French-Hodson
Nathan A. Kakazu
Sarah T. Bradshaw
Hans D. Hodes
Ryan C. Hudson
Bradley S. Thomas
Sharp Law, LLP
rafrenchhodson@midwest-law.com
nkakazu@midwest-law.com
sbradshaw@midwest-law.com
hhodes@midwest-law.com
bthomas@midwest-law.com
rhudson@midwest-law.com
*Attorneys for Plaintiff*

Adam J. Merello
Assistant Attorney General
adam.merello@ago.mo.gov
*Attorney for Defendants*
*Trevor Foley and Karen S. Boeger*

*/s/ Dennis S. Harms*